

**FILED**

DEC 2 2 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | SUPPLEMENTAL INFORMATION |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.: 1:22CR388 |
| v. | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| QUIONNE HAMIL, aka MACK, | ) | |
| | ) | Title 18, United States Code, Section 1343 |
| Defendant. | ) | |

GENERAL ALLEGATIONS

Background on Unemployment Insurance

1.  The Social Security Act of 1935 initiated the federal and state unemployment insurance ("UI") system. The UI system provided temporary financial systems to eligible lawful workers who were unemployed through no fault of their own. The purpose of the UI system was twofold: to lessen the effects of unemployment through direct cash payments to laid-off workers; and to ensure that life necessities were met weekly while the worker sought employment.

2.  State unemployment systems and benefits were joint federal and state enterprises administered by the State Workforce Agency ("SWA") of a given state and largely financed by taxes on private employers located in the state. SWAs administered UI programs in accordance with federal laws and regulations. Each state set its own additional requirements for eligibility, benefit amounts, and length of time benefits were paid. Generally, UI weekly benefit amounts were based on a percentage of a lawful worker's earnings over a base period. When state unemployment benefits were exhausted, the U.S. Department of Labor ("DOL") could supplement them with federal funds. In Ohio, the SWA was the Office of Unemployment Insurance Operations, which was part of the Ohio Department of Job and Family Services

("ODJFS"). In Colorado, the SWA was the Colorado Department of Labor and Employment, Division of Unemployment Insurance ("DLE"). In California, the SWA was the Employment Development Department ("EDD").

3.      Because of the Coronavirus Disease 2019 ("COVID-19"), these SWAs' ability to provide UI benefits was expanded. On or about March 13, 2020, the President declared the ongoing COVID-19 pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia, pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5207. On or about March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA"). The FFCRA provided additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. On or about March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act into law. The CARES Act expanded the SWAs' ability to provide UI for many workers impacted by COVID-19, including for workers who are not ordinarily eligible for UI benefits. The CARES Act provided for new programs: Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC"), among others (collectively, "Pandemic UI").

4.      PUA provided for up to 39 weeks of benefits to individuals who were self-employed, seeking part-time employment, or otherwise would not qualify for regular or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act. Coverage included individuals who exhausted all rights to regular UI benefits or extended benefits under state or federal law or PEUC. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker qualified for PUA

2

benefits administered by ODJFS, DLE, and EDD if the individual previously performed such work in Ohio, Arizona, or California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

5.      The eligible timeframe to receive PUA was for weeks of unemployment beginning on or after January 27, 2020, through December 31, 2020.

6.      FPUC provided individuals who were collecting regular UI, PEUC, and PUA with an additional $600 per week from April 5, 2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

7.      PEUC provided for up to 13 weeks of benefits to individuals who had exhausted regular UI under state or federal law; had no rights to regular UI under any other state or federal law; were not receiving UI under the UI laws of Canada; and were able to work, available for work, and actively seeking work.  The eligible timeframe to receive PEUC was from April 5, 2020 (or the next date after the respective state had an established agreement with the federal government), through July 31, 2020.

8.      To obtain Pandemic UI, an individual could apply online through ODJFS's, DLE's, or EDD's website, the servers for which were located in the states of Virginia, Colorado, and California.  Claimants answered various questions to establish their eligibility.  Claimants were required to provide personal identifying information, which included their name, mailing address, gender, email, phone number, social security number, and date of birth (collectively, "personal identification information").  Moreover, claimants had to identify a qualifying occupational status and COVID-19-related reason for being unemployed.  Claimants could also submit several documents as evidence of their income.

<u>COUNTS 3-5</u>
(Wire Fraud, 18 U.S.C. § 1343)

The First Assistant United States Attorney charges:

9.      The factual allegations contained in paragraphs 1 through 8 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

10.     From on or about June 7, 2020, until on or about May 1, 2021, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant QUIONNE HAMIL, aka MACK, and others known and unknown, knowingly devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

11.     It was part of the scheme that Defendant HAMIL would submit false information regarding previous claims made to other SWAs, including the states in which he worked, the reasons for his unemployment, and the dates of his unemployment.

12.     On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, for the purpose of executing and attempting to execute the foregoing scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Approximate Date of Application | Server Location | Description |
|-------|---------------------------------|-----------------|-------------|
| 3 | June 7, 2020 | Virginia | Ohio Unemployment Insurance Application |
| 4 | July 22, 2020 | California | California Unemployment Insurance Application |
| 5 | January 16, 2022 | Colorado | Colorado Unemployment Insurance Application |

All in violation of Title 18, United States Code, Section 1343.

4

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By: _____

MICHAEL L. COLLYER
Chief, White Collar Crimes Unit